### FREEMAN v. WELLMAN et al.

(District Court, D. Massachusetts. May 13, 1895.)

No. 532.

SHIPPING—CUSTOMARY QUICK DISCHARGE.
    Where 30 or 31 working days were occupied in discharging a cargo of 475,000 feet of lumber, which had been loaded in 16 days, held, that there was a failure to comply with an agreement to discharge with "customary quick dispatch," although some allowance was to be made for wet weather, the lumber being seasoned.

This was a libel by R. R. Freeman against H. E. Wellman and others for demurrage.

Carver & Blodgett for libelant.
C. T. & T. H. Russell, for respondents.

ALDRICH, District Judge. This case involves a controversy as to the discharge of a cargo of hard pine lumber from the schooner Annie E. Kranz at the wharf in the port of Boston. The schooner was loaded at New Orleans, under a written contract of charter party and bill of lading, which called for the "customary quick dispatch" in the discharge of the cargo at the wharf. It was provided by the contract that the charterers were to furnish 30,000 feet per day for loading, and there is no question about the fact that she was loaded at about that rate. The cargo consisted of about 475,000 feet of lumber, and was loaded in 16 days, if I recall the evidence correctly. There is no controversy about the loading, however, and the time occupied is only important so far as it bears on the controversy as to the discharge. The testimony on both sides tended to show that loading lumber necessarily requires more time than the discharge, for the reason that care is required in packing the small pieces in and about the vessel.

Coming now directly to the controversy, the vessel arrived at the port of Boston, August 31, 1892, and the discharge was finished October 5th or 6th. She was therefore at the wharf 36 or 37 days, and, deducting Sundays and holidays, there were left 30 or 31 working days. From these days, however, some deduction should be made by reason of wet weather, as the lumber was seasoned, and care

required to keep it from the water while being discharged. I assume that the term "customary quick dispatch" in discharging means what is known as the ordinary quick dispatch, as distinguished from the usual discharge; and from the evidence I am inclined to think it more probable than otherwise that it is understood in the business to mean a gang of stevedores at each hatchway through which lumber can be delivered, while in the ordinary discharge one gang only is employed. In this instance the stevedore in control of the discharge of the cargo was also foreman of the wharf and agent of Wellman, Hall & Co., the consignees; and the principal controversy in this case—in fact the only controversy—is upon the question whether the consignees exercised proper foresight and care, as it was their duty to do, in keeping the wharf unobstructed and in a condition for free discharge, in view of the fact that the cargo was to be unloaded with customary quick dispatch. The evidence taken altogether would seem to make it more probable than otherwise that there was unnecessary and unreasonable delay at the wharf, and that such delay was chargeable to the respondents or their agents. It is difficult to determine just how much unreasonable delay there was. It would seem, however, that the discharge could and should, at a liberal limit, have been made in 20 or 21 days, and the unreasonable delay, therefore, was at least 9 days.

As there is no controversy about the demurrage, which is fixed by the charter party at $60 per day for each day's detention, it follows that the libelant is entitled to recover $540, with interest from date of libel. Decree accordingly, with costs.